1
2
3
4
5
6
7
8                    **UNITED STATES DISTRICT COURT**

9                   **SOUTHERN DISTRICT OF CALIFORNIA**

10

11   GRACE CHURCH OF NORTH                    CASE NO. 07-CV-419 H (RBB)
     COUNTY, a non profit religious
12   corporation of California, on behalf of  **ORDER GRANTING**
     itself and its members,                  **PLAINTIFF'S MOTION FOR**
13                                             **SUMMARY JUDGMENT AND**
                          Plaintiff and Petitioner,  **DENYING WITHOUT**
14        vs.                                 **PREJUDICE DEFENDANTS'**
                                              **CROSS MOTION FOR**
15                                            **SUMMARY JUDGMENT**

16   CITY OF SAN DIEGO, a municipal
     charter corporation existing under the
17   laws of the State of California; RANCHO
     BERNARDO COMMUNITY
18   PLANNING BOARD, a charter
     organization of the City of San Diego; and
19   the SAN DIEGO PLANNING
     COMMISSION,
20
                        Defendants and Respondents.
21

22           On July 2, 2007, plaintiff Grace Church of North County ("Plaintiff" or "Grace
23   Church") filed a first amended verified complaint against the City of San Diego, Rancho
24   Bernardo Community Planning Board, and the San Diego Planning Commission (collectively
25   "Defendants"). (Doc. No. 20.) Plaintiff alleged violations of the Religious Land Use and
26   Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. §§ 2000cc et seq.; the First and
27   Fourteenth Amendments to the United States Constitution; the California Constitution; and
28   several California statutes.

On March 10, 2008, Plaintiff filed a motion for partial summary judgment. (Doc. No. 60.)  Plaintiff seeks summary judgment in its favor on Plaintiff's RLUIPA claims.  In conjunction with Plaintiff's motion for summary judgment, Plaintiff filed a motion for a permanent injunction requiring Defendants to approve a ten-year conditional use permit allowing Plaintiff to remain at its current facility for the remainder of Plaintiff's lease.  Defendants filed a response in opposition on March 24, 2008.  (Doc. No. 71.)  Plaintiff filed a reply.  (Doc. No. 74.)

On March 10, 2008, Defendants filed a cross motion for summary judgment.  (Doc. No. 59.)  Defendants seek summary judgment on all of Plaintiff's claims.  On March 24, 2008, Plaintiff filed a response in opposition to Defendants' motion.  (Doc. No. 70.)  Defendants filed a reply.  (Doc. No. 72.)

The Court held a hearing on the parties' cross motions for summary judgment on April 11, 2008.  John C. Eastman, Robert W. Loewen and Jeffrey A. Todd appeared on behalf of Plaintiff.   Daniel F. Bamberg, Christine M. Leone and Jennifer Gilman appeared for Defendants.

The parties do not materially dispute the facts, but only the application of RLUIPA to those facts.  The Court concludes that Ninth Circuit case law supports resolution on summary judgment, particularly where Plaintiff's RLUIPA claims come before the Court on cross motions for summary judgment.  See Guru Nanak Sikh Society of Yuba City v. County of Sutter, 456 F.3d 978, 985 n. 6 (9th Cir. 2006) ("[b]ecause the material facts are undisputed, we are left to decide whether the district court correctly applied RLUIPA to those facts").  In this case it is undisputed that:

- City staff initially stated that it could not support Grace Church's application for a conditional use permit ("CUP") allowing Grace Church to occupy a parcel of land within the Rancho Bernardo Industrial Park, because City staff believed that church use did not conform with the Rancho Bernardo Community Plan.
- The City directed Grace Church to submit its CUP application to the Rancho Bernardo Community Planning Board ("RBPB") for that body to make a

recommendation to the City.   The RBPB recommended denial of Grace Church's CUP application.

• Grace Church's application then went before a City hearing officer, who approved a seven year CUP.

• The RBPB appealed to the City Planning Commission the hearing officer's decision approving a seven year CUP.  The Planning Commission approved a five year CUP without explaining why it reduced the term that the hearing officer approved.

• The Planning Commission voted to delete a provision inviting Grace Church to apply for an extension when the five year CUP expired.

• Several members of the Planning Commission requested that a clause be inserted in Grace Church's CUP expressly prohibiting the church from seeking an extension.  When staff responded that the church could not be prevented from seeking an extension, individual commissioners admonished Grace Church not to return after five years.

• Shortly after the Planning Commission approved a five year CUP, the RBPB adopted guidelines, applicable only to churches, under which it would be impossible for RBPB to recommend approval of any extension to Grace Church's CUP.

After consideration of the parties' briefs, all the evidence properly before the Court[1], and the arguments of counsel at the hearing, the Court concludes that Defendants "implement[ed] a land use regulation in a manner that imposes a substantial burden on the religious exercise of" Grace Church. 42 U.S.C. § 2000cc(a)(1). The Court also concludes that Defendants fail to demonstrate that imposition of that burden was "in furtherance of a compelling governmental interest" and was "the least restrictive means of furthering that compelling governmental interest." Id.  Accordingly, the Court grants Plaintiff's motion for

---

[1]   The Court grants Defendants' request for judicial notice, see Doc. No. 59-8, which Plaintiff has not opposed.

1  summary judgment and will order further briefing regarding Plaintiff's remedy.  The Court

2  denies Defendants' motion for summary judgment regarding Plaintiff's RLUIPA claims and

3  denies without prejudice the remainder of Defendants' motion for summary judgment.

4                                      **Background**

5          Grace Church is a non-denominational Christian church that has operated since 1995

6  in the Rancho Bernardo area of San Diego, California.  (Decl. of Eric Turbedsky ISO Plf's.

7  Mot. for Summ. J. & Perm. Inj. ("Turbedsky Decl.") ¶ 2.)  Rancho Bernardo is a central

8  location for the members of the church.  (<u>Id.</u> ¶ 3.)  The church's goal is to eventually secure

9  a permanent facility in Rancho Bernardo.  (<u>Id.</u>)

10         For several years, beginning around the summer of 1997, the church met at Rancho

11 Bernardo High School.  (<u>Id.</u> ¶ 2.)  Pastor Turbedsky states that, for a number of reasons, the

12 high school became an insufficient meeting place.  Grace Church's membership began to

13 exceed the capacity of the high school's public assembly hall.  (<u>Id.</u> ¶ 4.)  The seats had no

14 center aisle, making access to inner seats difficult and causing disruptions to the service

15 when children exited.  (<u>Id.</u>)  Additionally, the church had access to the high school only on

16 a week-to-week basis, requiring significant effort to set up and break down equipment each

17 week and causing uncertainty over whether the facilities would be available on a given

18 Sunday.  (<u>Id.</u>  ¶ 5.)  On one occasion, the high school staff failed to unlock the doors on

19 Sunday morning, preventing access by the church.  (<u>Id.</u>)

20         With the goal of eventually securing a permanent location in Rancho Bernardo,

21 Grace Church decided to lease a facility on a longer-term basis.  (<u>Id.</u> ¶ 3.)  The Church

22 sought to secure a facility for ten years.  (<u>Id.</u>)  The church's plan for growth called for that

23 period to be divided into an initial five years focused on expanding membership and

24 ministries, and a second five years devoted to the process of locating and securing a

25 permanent facility.  (<u>Id.</u>)  In early 2004, the church began to search for a facility that it

26 could lease for ten years in accordance with this plan.  (<u>Id.</u> ¶ 2.)

27         In 2004, Grace Church hired a real estate agent to assist the church in finding a

28 facility to lease.  (Decl. of David Harper ISO Plf's. Mot. for Summ. J. & Perm. Inj.

("Harper Decl.") ¶ 5.)  The agent consulted with Grace Church's pastors and staff and, based on his experience with commercial real estate, evaluated the church's needs with respect to location in Rancho Bernardo, size, cost, necessity of improvements, parking, landlords' willingness to work with Grace Church, and landlords' flexibility in negotiating a lease.  (Id.; see id. ¶¶ 6-11.)  Harper determined landlord flexibility to be an especially important factor; therefore, he sought a property that had not been rented for some time and that had no viable short term prospects for new tenants.  (Id. ¶ 11.)  Harper stated that no parcel was available in a section of Rancho Bernardo where zoning regulations permit institutional use as a matter of right.  (Id. ¶ 14.)

Harper found three sites potentially meeting the church's needs within the Rancho Bernardo Industrial Park.  (Id. at ¶¶ 15-17.)  The industrial park is zoned IP-2-1, which allows certain specified non-industrial uses, including church use, with a conditional use permit ("CUP").  (See Decl. of Jeffrey A. Todd ISO Plf's. Mot. for Summ. J. & Perm. Inj. ("Todd Decl."), Exs. B, DD.)  Grace Church's offer to lease the first of those properties, which at that point was occupied by another religious institution preparing to move, was refused by the landlord.  (Harper Decl. ¶ 15; Turbedsky Decl. ¶ 6.)  The owner of the second property, which previously was leased to a synagogue, stated that he did not wish to lease to another religious use tenant because of the uncertainty that the tenant ultimately would obtain a CUP.  (See Turbedsky Decl. ¶ 6.)  The owner of the third property also declined an offer to lease by Grace Church.  (Harper Decl. ¶ 16; Turbedsky Decl. ¶ 6.)

On approximately October 18, 2005, Harper contacted the landlord of property on Via Frontera in the Rancho Bernardo Industrial Park ("the Via Frontera property"). (Harper Decl. ¶ 17; Turbedsky Decl. ¶ 6.)  The facility constituted a suitable space in the Rancho Bernardo area and the owner was flexible, providing a six month period for the church to acquire a CUP as well as an option to renew the lease for an additional five years, consistent with Grace Church's two part plan for growth described above.  (See Harper Decl. ¶ 18, Turbedsky Decl. ¶ 7.)  The parties specifically negotiated the option clause, which the church states was of such importance that it would not have entered the lease

1    without it.  (Turbedsky Decl. ¶ 7 and Ex. A.)  The Via Frontera property shares a parking

2    lot with two adjacent buildings owned by the owner of the Via Frontera property, and the

3    owner agreed that Grace Church could utilize the entire parking lot on Sundays, since the

4    other two buildings were not active on Sundays.  (Harper Decl. ¶ 18; Turbedsky Decl., Ex.

5    B.)  On January 1, 2006, Grace Church entered the lease, which provided for a six month

6    holding period during which the church would pay a reduced monthly rental rate while

7    applying for a CUP.  (Turbedsky Decl. ¶ 8, Ex. B.)

8            The CUP Process

9            On February 9, 2006, Grace Church filed a CUP application with the City's

10   Development Services Department.  (Decl. of Laura Black ¶ 4, Ex. 1.)  The church sought a

11   ten year CUP consistent with the period for which Grace Church can control the Via

12   Frontera property under its lease.  On March 24, 2006, the application was deemed

13   complete for processing.  (Id., id., Ex. 2.)  Pursuant to the City of San Diego Municipal

14   Code, Grace Church's CUP application was "Process Three," the stated intent of which "is

15   to review these uses on a case-by-case basis to determine whether and under what

16   conditions the use may be approved at a given site."  (Turbedsky Decl., Ex. G at 01094-

17   97.)  City Planning staff had to review the church's application and make recommendations

18   to a hearing officer.  (Todd Decl., Ex. C.)

19           On April 13, 2006, the City issued an assessment letter summarizing the significant

20   project issues and course of action recommended to allow continued processing of the

21   permit application.  (See Decl. of Laura Black ¶ 6, Ex. 4.)  On June 14, 2006, Grace

22   Church's land use processing consultant received a second assessment letter from the City.

23   (Todd Decl., Ex. B.)  The letter stated that Planning staff had determined that Grace

24   Church's proposal was not in conformance with the Rancho Bernardo Community Plan.

25   (Id. at 2.)  The Industrial Objective of that plan is: "[t]o protect the designated industrial

26   areas from encroachment by non-industrial uses by prohibiting residential uses and non-

27   ancillary uses in industrially designated areas."  (Id.)  Because the Planning Department

28   determined that Grace Church's project would adversely affect that plan, it stated that it

1   "cannot support the proposed CUP."  (Id.)

2      The second assessment letter directed Grace Church to submit its application to the

3   Rancho Bernardo Community Planning Board ("RBPB") for a recommendation by that

4   body to the hearing officer.  (Id.)  Grace Church was instructed to indicate, in any

5   resubmittal of its application, how the project "incorporates any input suggested to you by

6   the community planning group."  (Id. at 2-3.)

7      On June 15, 2006, the RBPB held a public hearing regarding Grace Church's CUP

8   application.  (See Turbedsky Decl., Ex. F.)  The RBPB voted to recommend denial of the

9   CUP.  (Id.)  City staff later reported that the RBPB "voted 15-3-0 to deny the project

10  because its proposed use is inconsistent with the adopted Community Plan land use

11  designation."  (Id.)  The City report stated that "[d]iscussion at the meeting was focused on

12  the preservation of industrial lands for industrial uses within this community and to not

13  allow a church within this industrial park."  (Id.; see Todd Decl., Ex. H at 2-3.)

14     The next step in the CUP process was a hearing before a City hearing officer, which

15  took place on September 20, 2006.  (See Todd Decl., Ex. H at 1.)  Prior to that hearing, the

16  City issued a report to the hearing officer.  (Id.)  According to that report, City staff

17  supported the issuance of a CUP "with a limited term not to exceed five years."  (Id. at 2.)

18  City staff could not support a "longer or indefinite term," however, because the City would

19  consider that a "permanent use, which would conflict with the [Community] Plan's

20  Industrial Element regarding preservation of industrial lands."  (Id. at 2.)

21     Mr. Turbedsky appeared at the hearing and objected to the City's recommendation

22  of a five year CUP.  (Turbedsky Decl., Ex. C at 5:2-13.)  Mr. Turbedsky stated that the

23  church had requested a 10 year permit, and that limiting the CUP to five years would make

24  it "unfeasible for us to continue with the project timeline."  (Id.)  Turbedsky stated that "a

25  five year CUP effectively excludes Grace Church from this property."  (Id. at 8:16-17.)  At

26  the conclusion of the hearing, the City hearing officer approved a CUP for a term of seven

27  years.  (See Turbedsky Decl., Ex. D.)  The hearing officer stated that the decision was

28  based, in part, on her observation that the average length of CUPs city-wide had been

between ten and twenty years.  (Turbedsky Decl., Ex. C at 21:22-22:2.)  She also noted that the average length of CUPs in the Rancho Bernardo Industrial Park was between five and ten years.  (<u>Id.</u> at 26:19-21.)

On September 21, 2006, the RBPB voted to appeal to the City Planning Commission regarding the hearing officer's grant of a seven year CUP.  (Turbedsky Decl., Ex. E at 2.)  On November 9, 2006, City Planning staff issued a report to the Planning Commission.  (Turbedsky Decl., Ex. F.)  The report included a table summarizing several CUPs previously granted in the Rancho Bernardo Industrial Park.  (<u>Id.</u> at 3-4.)  The report stated that Planning staff believed "the required findings can be made to support the project for a term of seven (7) years."  (<u>Id.</u> at 3, 5.)

On November 16, 2006, the Planning Commission held a hearing on Grace Church's CUP application.  (Turbedsky Decl., Ex. I.)  The Planning Commission held a second hearing on December 7, 2006.  (Turbedsky Decl., Ex. J.)  At both hearings, City Planning staff reported that it supported a five year CUP despite the fact that the City's most recent report recommended a seven year CUP.  (Turbedsky Decl., Ex. I at 3:21-22; Ex. J at 4:1-5:3.)

As he had done before the City hearing officer, Mr. Turbedsky appeared before the Planning Commission to state that a five year CUP would be "quite a financial burden."  (Turbedsky Decl., Ex. J at 16:23.)  Several members of the RBPB appeared at the Planning Commission hearings to speak against Grace Church receiving a CUP at all.  (Turbedsky Decl., Ex. I at 6:14-18, 11:22-12:4, 13:19-14:4; Ex. J at 8:7-10, 9:8-11.)  RBPB members expressed their belief that the Rancho Bernardo Community Plan did not allow for church use in an industrial zone, that the city did not want non-conforming uses in the industrial zone, and that churches should be limited to the periphery of the industrial zone.  (<u>See</u> Turbedsky Decl., Ex. I at 4:17-16:15; Ex. J at 5:18-12:3.)  A former chairperson of the RBPB expressed his opinion that "these things have a tendency to become quasi-permanent and that's why we're kind of opposed at this moment."  (Turbedsky Decl., Ex. I at 8:16-21.)  An investor who owned the parcel adjacent to the Via Frontera property also spoke

07cv419

against Grace Church's requested CUP.  (Id. at 17:21-22:7.)  That individual stated that he believed Grace Church's occupying the Via Frontera property could change "the complexion of the neighborhood" as well as "injure [him] financially by having . . . companies not wanting to be next to a church."  (Id. at 21:11-13.)

At the December 7, 2006, hearing, individual members of the Commission voiced a variety of concerns over granting a CUP to Grace Church.  Commissioner Shultz expressed concern that doing so would be "sending the wrong message to the business community." (Turbedsky Decl., Ex. J at 26:22-23.)  Another commissioner expressed the belief that once a short term CUP was granted, permit holders tended to "become[] permanent."  (Id. at 28:11-13; see id. at 32:14-18.)  City Planning staff commented that Grace Church could not be prevented from seeking a subsequent CUP.  (Id. at 33:20-34:1.)  One commissioner inquired of staff, "Do you have preceden[t] where we do not allow an extension?"  (Id. at 33:16-17.)  A staff member responded that she did not know of any.  (Id. at 33:18.)

The Commission discussed a paragraph of the draft CUP that stated, "[p]rior to the expiration date of this Conditional Use Permit, the Owner/Permittee may submit an extension . . . to the City Manager for consideration with review and a decision by the appropriate decision maker at that time."  (Id. at 32:2-34:11; see Turbedsky Decl., Ex. F at C-BS-02027.)  Two commissioners stated that, instead of a provision inviting the church to seek an extension, they desired a clause in the CUP explicitly prohibiting the church from doing so.  (Id. at 45:13-15 ("I would really love to see a non-renewable clause in there"), 49:2-6 ("[C]an we make it five years and then that's it so that there's no – there's no thought in anybody's mind that they can extend it or come back?").)  After that discussion, the Planning Commission voted to delete from Grace Church's CUP the paragraph stating that Grace Church "may submit an extension."  (Id. at 49:2-17.)  The Commission also voted to insert language requiring Grace Church to remove any improvements to the Via Frontera property at the expiration of the five year CUP period.  (Id. at 49:2-17.)  That provision later was deleted because it conflicted with Grace Church's lease.  (See Turbedsky Decl., Ex. B at ¶ 12.2.)

At the conclusion of the hearing on December 7, 2006, the Planning Commission approved a five year CUP.  (Turbedsky Decl., Ex. J at 48:10-49:9.)  Since the Planning Commission proceeding was an appeal of the hearing officer's decision to grant a seven year CUP, Commissioner Schultz clarified, "for the record because we've had some confusion about this before," that he had "consult[ed] with the city attorney to make sure that as a part of our discretion we do have the – the discretion to modify or affirm the decision down below that [which] we're dealing with."  (Id. at 47:25-48:5.)  After the five year CUP was approved, one commissioner stated, "I just want to advise Pastor Eric [Turbedsky] . . . that five years will go by very, very fast, and that I know that your congregation and your faith will find you another place because five years will go by very fast."  (Id. at 52:9-13.)

The CUP approved by the Planning Commission will expire on December 7, 2011.  (Turbedsky Decl., Ex. K at DSD00067 ¶ 9.)  Under the terms of its lease, Grace Church may occupy the Via Frontera property until June 30, 2016.  (Turbedsky Decl., Ex. B at ¶¶ 1.7, 1.9, 2.4; see Supp. Decl. of Eric Turbedsky ISO Plf's. Oppo. to Defs.' Mot. for Summ. J. ("Supp. Turbedsky Decl.") ¶ 13 and Ex. A.)

The RBPB Adopts New Guidelines

On December 18, 2006, shortly after the Planning Commission approved a five year CUP for Grace Church, the chairman of the Rancho Bernardo Planning Board appointed a committee "to formulate guidelines for future requests for religious organization CUPs in the Rancho Bernardo Community Plan industrial park."  (Turbedsky Decl., Ex. L at GRACE 01941.)  On January 18, 2007, the RBPB adopted the committee's recommendations and issued guidelines that state: "It is the intent of the Planning Board not to oppose a request for a CUP for a religious organization in the industrial park if the following conditions are requested and/or agreed to by the applicant and if there are not other issues in the City Assessment Letter or Environmental Review" – (1) the CUP and corresponding use "shall expire four years after the approval date" and, on expiration of the CUP, "the facilities and improvements . . . shall be removed" from the site and the property

1    restored to its original condition; (2) the facility "shall not exceed a total of 8,000 square

2    feet of gross floor area"; (3) [r]eligious services shall be limited to off-peak hours

3    (weekends, holiday, and evening)"; and (4) "[a] child care facility is not allowed on the

4    premises."  (Id. at GRACE 01942.)

5                                    **Discussion**

6    **I.    Summary Judgment - Legal Standard**

7             Summary judgment is appropriate when "the pleadings, the discovery and disclosure

8    materials on file, and any affidavits show that there is no genuine issue as to any material

9    fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).

10   "[S]ummary judgment may be rendered on liability alone, even if there is a genuine issue

11   on the amount of damages."  Fed. R. Civ. P. 56(d)(2).  Summary judgment may be entered

12   "against a party who fails to make a showing sufficient to establish the existence of an

13   element essential to that party's case, and on which that party will bear the burden of proof

14   at trial," because "a complete failure of proof concerning an essential element of the

15   nonmoving party's case necessarily renders all other facts immaterial."  Celotex Corp. v.

16   Catrett, 477 U.S. 317, 322 (1986).

17            The moving party "bears the initial responsibility of . . . identifying those portions of

18   the pleadings, depositions, answers to interrogatories, and admissions on file, together with

19   the affidavits, if any, which it believes demonstrate the absence of a genuine issue of

20   material fact."  Id. at 323.  Once the moving party satisfies that responsibility, to avoid

21   summary judgment the non-moving party must come forward with admissible evidence

22   showing that a genuine issue of material fact exists.  Matsushita Elec. Indus. Co. v. Zenith

23   Radio Corp., 475 U.S. 574, 586 (1986).   It is not sufficient to simply show "some

24   metaphysical doubt as to the material facts."  Id.  The non-moving party must point to

25   evidence "from which a reasonable jury could return a verdict in its favor."  Triton Energy

26   Corp. v. Square D Co., 68 F.3d 1216, 1221 (9th Cir. 1995).

27   **II.    Plaintiff's Motion for Summary Judgment**

28            Plaintiff moves for summary judgment on its RLUIPA claims.  Congress enacted

                                          - 11 -

RLUIPA in response to a 1997 Supreme Court decision that invalidated the Religious Freedom and Restoration Act.  See City of Boerne v. Flores, 521 U.S. 507 (1997)  The Ninth Circuit has upheld RLUIPA as "a congruent and proportional exercise of congressional power pursuant to the Fourteenth Amendment."  Guru Nanak Sikh Society of Yuba City v. County of Sutter, 456 F.3d 978, 985 (9th Cir. 2006) ("Guru Nanak"); see Mayweathers v. Newland, 314 F.3d 1062, 1066 (9th Cir. 2002).

This case implicates two separate prongs of RLUIPA.  As discussed below, the Court grants summary judgment in Plaintiff's favor on Plaintiff's claim under RLUIPA's "substantial burden" provision.  42 U.S.C. § 2000cc(a)(1).  The Court does not reach Plaintiff's claim that Defendants violated RLUIPA by treating Plaintiff on "less than equal terms with a nonreligious assembly or institution."  42 U.S.C. § 2000cc(b)(1).

### A.      RLUIPA Applies To Defendants' Actions

RLUIPA's substantial burden provision applies whenever "the substantial burden is imposed in the implementation of a land use regulation or system of land use regulations, under which a government makes, or has in place formal or informal procedures or practices that permit the government to make, individualized assessments of the proposed uses for the property involved."  42 U.S.C. § 2000cc(a)(2)(C); see Guru Nanak, 456 F.3d at 986 ( "RLUIPA applies when the government may take into account the particular details of an applicant's proposed use of land when deciding to permit or deny that use.").  Although "RLUIPA does not apply directly to land use regulations" themselves, when those regulations are "applied to grant or deny a certain use to a particular parcel of land, that application is an 'implementation' under 42 U.S.C. § 2000cc(2)(C)."  Guru Nanak, 456 F.3d at 987.

The Court concludes that the City's application of its CUP procedures to Grace Church constitute an "implementation of a land use regulation or system of land use regulations, under which a government makes . . . individualized assessments of the proposed uses for the property involved."  42 U.S.C. § 2000cc(a)(2)(C).  The City of San Diego Municipal Code states that "the intent" of the City's CUP procedures "is to review

07cv419

1   these uses on a case-by-case basis." (See Turbedsky Decl., Ex. G at 01094-97.) Therefore,

2   RLUIPA's substantial burden provision applies here.

3   **B.      Substantial Burden on Religious Exercise**

4   RLUIPA provides that "[n]o government shall impose or implement a land use

5   regulation in a manner that imposes a substantial burden on the religious exercise of a

6   person, including a religious assembly or institution, unless the government demonstrates

7   that imposition of the burden on that person, assembly, or institution (A) is in furtherance

8   of a compelling governmental interest; and (B) is the least restrictive means of furthering

9   that compelling governmental interest." 42 U.S.C. § 2000cc(a)(1). Congress directed that

10  RLUIPA is to be "construed in favor of a broad protection of religious exercise, to the

11  maximum extent permitted by the terms of this chapter and the Constitution." 42 U.S.C.

12  § 2000cc-3(g).

13  Congress specifically addressed the parties' respective burdens of persuasion. "If a

14  plaintiff produces prima facie evidence to support a claim alleging . . . a violation of section

15  2000cc of this title, the government shall bear the burden of persuasion on any element of

16  the claim, except that the plaintiff shall bear the burden of persuasion on whether the law

17  (including a regulation) or government practice that is challenged by the claim substantially

18  burdens the plaintiff's exercise of religion." 42 U.S.C. § 2000cc-2(b). The Court applies

19  these standards to the evidence.

20  **1.      Defendants Imposed a Substantial Burden on Plaintiff's Exercise**

21  **of Religion**

22  RLUIPA defines religious exercise as "any exercise of religion, whether or not

23  compelled by, or central to, a system of religious belief." 42 U.S.C. § 2000cc-5(7)(A).

24  "The use, building, or conversion of real property for the purpose of religious exercise shall

25  be considered to be religious exercise of the person or entity that uses or intends to use the

26  property for that purpose." 42 U.S.C § 2000cc-5(7)(B). The Court concludes that Grace

27  Church's intent to utilize and improve the Via Frontera property falls within RLUIPA's

28  definition of religious exercise. See San Jose Christian College v. City of Morgan Hill, 360

F.3d 1024, 1034 (9th Cir. 2004) ("Inasmuch as [the plaintiff] intends to convert the [p]roperty from hospital use to a place for religious education, it appears that a 'religious exercise' is involved in this case.").

"For a land use regulation to impose a substantial burden, it must be oppressive to a significantly great extent.  That is, a substantial burden on religious exercise must impose a significantly great restriction or onus upon such exercise."  Guru Nanak, 456 F.3d at 988 (quoting San Jose Christian, 360 F.3d at 1034).  In determining whether Defendants imposed a substantial burden on Plaintiff's religious exercise, the Court is guided by Guru Nanak, which represents the most thorough discussion by the Ninth Circuit of RLUIPA's substantial burden provision.  In Guru Nanak, a religious organization first sought a CUP permitting it to construct a Sikh temple on land zoned for low density residential use.  456 F.3d at 981-82.  Despite a staff recommendation of approval, the county planning commission voted unanimously to deny the CUP.  Id. at 982.  That denial was based on citizens' fears that the resulting noise and traffic would interfere with the existing neighborhood.  Id.  The following year, the organization acquired a parcel of land in a different portion of the county, zoned as a general agricultural district, where churches and temples were "conditionally permitted . . . through issuance of a CUP."  Id.  The organization again applied for a CUP, which the county planning commission approved, subject to various conditions required by the county and stipulated to by the organization.  Id. at 983.  Several citizens appealed the grant of a CUP to the county Board of Supervisors.  (Id.)  After holding a public hearing, that Board of Supervisors unanimously reversed the planning commission's approval and denied the CUP application.  Id.  The district court granted summary judgment for the plaintiff under RLUIPA's substantial burden provision.  Id. at 984.

The Ninth Circuit affirmed the grant of summary judgment, agreeing that the county imposed a substantial burden "based on two considerations: (1) that the County's broad reasons given for its tandem denials could easily apply to all future applications by Guru Nanak; and (2) that Guru Nanak readily agreed to every mitigation measure suggested by

the Planning Division, but the County, without explanation, found such cooperation insufficient." Id. at 989.  "Most important" to the Ninth Circuit was "the history behind Guru Nanak's two CUP application processes, and the reasons given for ultimately denying those applications, [which] to a significantly great extent lessened the possibility that future CUP applications would be successful." Id.

Turning to the facts of the present case, the Court concludes that the mandatory CUP process established by Defendants and applied to Grace Church – with the result that Plaintiff received a CUP of only half the length Plaintiff requested, and has no reasonable expectation that Defendants will approve any extension – constituted a substantial burden on Grace Church's exercise of religion.  At various levels of Defendants' mandatory CUP process, Grace Church experienced outright hostility to its application, decision-making that is seemingly arbitrary or pretextual, and ignorance regarding the requirements of controlling federal law regarding the application of land use laws to religious institutions. (E.g., Turbedsky Decl., Ex. C at 23:22-24:6; Ex. I at 6:14-18, 11:22-12:4, 13:19-14:4; Ex. F at C-BS-02013-02014; Ex. G at 01130-01131; Ex. J at 6:11-15, 7:12-15, 8:7-10, 9:8-11; Todd Decl., Ex. G at C-BS-02056.)  In addition to the burden presented by this process, the Court concludes that Grace Church faces substantial uncertainty regarding whether any future attempts to extend the current CUP would be successful.  (E.g., Turbedsky Decl., Ex. J at 45:13-15, 49:2-6, 52:9-13; Turbedsky Decl., Ex. L; Todd Decl., Ex. J at 126:13-127:19.)

Frequently during the mandatory CUP process established by Defendants, Grace Church experienced hostility to its application and was admonished not to return in five years for an extension.  (See Turbedsky Decl., Ex. J at 52:9-13.)  The Planning Commission voted to delete the draft paragraph which invited Grace Church to submit an application to extend its CUP, and individual members of that Commission expressed the view that there should be no extensions sought or permitted.  (Id. at 45:13-15 ("I would really love to see a non-renewable clause in there"), 49:2-6 ("[C]an we make it five years and then that's it so that there's no – there's no thought in anybody's mind that they can

extend it or come back?").)  The commissioners also expressed concern that, once a short term conditional use was granted, it became difficult to prevent it from becoming a longer term use.  (E.g., Turbedsky Decl., Ex. J at 28:11-13.)  Deposition testimony confirms that Grace Church will face an uncertain and potentially hostile process again if it renews its application.  (See id. at 144:24-145:8 ("I never felt I had to justify" the decision to limit Grace Church's CUP to five years instead of seven).  The Court concludes that, "[a]t the very least, such . . . decision-making establishes that any future CUP applications . . . would be fraught with uncertainty."  Guru Nanak, 456 F.3d at 991.  As in Guru Nanak, this uncertainty regarding the future constitutes a present and very real burden on the church's religious exercise, since Plaintiff does not know whether it will be able to remain at the Via Frontera property for the full term of its lease (and has received several indications that it will not).

In addition to Grace Church's experience with the Planning Commission, the CUP process established by the City required the church to go through an additional body – the Rancho Bernardo Planning Board – made up of community members who lacked legal training and possessed little to no knowledge of RLUIPA.  (E.g., Turbedsky Decl., Ex. J at 6:11; see also id., Ex. F at C-BS-02037.)  Despite the RBPB's lack of knowledge regarding RLUIPA's requirements, the City specifically established the RBPB as a central part of the mandatory CUP process.  The evidence indicates no attempt by the City to educate the RBPB regarding RLUIPA.  To the contrary, the City expressly directed the RBPB to deny CUPs for any project conflicting with the stated objective of preserving industrial lands.  As one member of the RBPB stated to the Planning Commission, "Staff from the city held a workshop last January for the Rancho Bernardo Community Planning Board for the sole purpose of updating us on the economic climate in the city and the importance of our group to make extra special efforts to protect our industrial lands.  The message was very clear, no more encroachments into the industrial lands."  (Turbedsky Decl., Ex. I at 12:19-25.)

The minutes of the RBPB meeting note that Plaintiff's lawyer "stated that there is a law called RLUIPA that was passed by [C]ongress and deals with land use decisions

affecting religious organizations." (Turbedsky Decl., Ex. F at C-BS-02037.) To the extent members of the RBPB were even aware of RLUIPA's existence, the evidence indicates that their understanding of the law was flawed. (See Turbedsky Decl., Ex. C at 23:22-24:6 ("fundamentally I think the real question with respect to RLUIPA is not necessarily the substantial burden, because by itself that doesn't really mean anything"); Ex. J at 6:11-15 ("while I am no attorney, I have read the reference[d] law and do not come up with the same interpretation"), id at 7:12-15 ("I can't help but think that preservation of a very important asset, such as the industrial park, cannot help but be considered [a] 'compelling'" governmental interest.)

In addition to the RBPB's lack of knowledge regarding RLUIPA, the history behind Grace Church's CUP application demonstrates that, to date, the RBPB has exhibited hostility and disapproval regarding Grace Church receiving any CUP at all. The zoning provisions applicable to the Rancho Bernardo Industrial Park ("RBIP") expressly permit specified non-industrial uses, including church use. (Todd Decl., Ex. DD at § 131.0622, Table 131-06B.) Pursuant to these zoning provisions, numerous CUPs have been granted for non-industrial uses in the RBIP. Such uses include (1) a health care facility that received a four year CUP in 1998 and a seven year extension in 2003, (2) Gyminny Kids Inc., a gymnastics school, which received a seven year CUP in 1992, (3) Green Valley Church, which was granted a five year CUP in 1997 and a ten year extension in 2003, (4) a synagogue that received a seven year CUP in 1997, and (5) a third religious facility that was granted a seven year CUP in 1993. (See Turbedsky Decl., Ex. F at C-BS-02013-02014.) Despite this history, the RBPB voted to completely deny Grace Church's CUP application. The only reason expressed to support the denial of Grace Church's CUP was that church use in the RBIP did not conform with the Community Plan, even though the relevant portions of the Community Plan have not changed since prior CUPS have been approved for church use and other non-industrial uses. (Turbedsky Decl. ¶ 9, Ex. G at 01130-31; Todd Decl., Ex. G at C-BS-02056.)

The RBPB's opposition to Grace Church's application was not limited to its initial

1    recommendation that the CUP be denied.  The RBPB appealed the City hearing officer's

2    decision to grant a CUP, even though that CUP was shorter than the one Grace Church had

3    requested.  (Todd Decl., Ex. I at 6:13-19; Turbedsky Decl., Ex. E at 2.)  Then, when Grace

4    Church succeeded before the Planning Commission (even though the Planning Commission

5    reduced the CUP granted by the hearing officer from seven years to five years), the RBPB

6    almost immediately adopted guidelines – applicable only to religious organizations – that

7    not only would have barred a recommendation in favor of the present CUP but also would

8    prohibit the RBPB from recommending any extension in the future.  (See Turbedsky Decl.,

9    Ex. L.)  An extension lasting until the end of Grace Church's lease would run afoul of the

10   RBPB's provision against any religious organization CUP lasting more than four years, and

11   any extension as to the Via Frontera property would contravene the provision against a

12   religious organization's facility exceeding 8000 square feet.  (Id.)

13          In short, Defendants' actions and statements "have to a significantly great extent

14   lessened the prospect of" Grace Church being able to remain in its current facility beyond

15   the limited term of its current five year CUP.  Guru Nanak, 456 F.3d at 992.  The Court has

16   given careful consideration to Defendants' attempts to distinguish Guru Nanak on the basis

17   that the present case does not involve the complete denial of a CUP.  Additionally, the

18   Court does not interpret RLUIPA as requiring that Defendants grant in its entirety every

19   CUP application by a religious organization.  However, based on the undisputed facts of

20   this case, the Court concludes that Defendants implemented a land use regulation in a

21   manner that imposed "a significantly great restriction or onus" on Plaintiff's religious

22   exercise.  Id. at 998; see 42 U.S.C. § 2000cc(a)(1).  In light of the mandatory process

23   imposed on Grace Church to date, the church has no reasonable expectation that any

24   application for an extension will succeed.  In Guru Nanak, the Ninth Circuit cited with

25   approval a case "finding a substantial burden where a church's future efforts to locate

26   another parcel of property or file new land use applications would result in delay,

27   uncertainty, and expense."  456 F.3d at 991 (quoting Saints Constantine & Helen Greek

28   Orthodox Church, Inc. v. City of New Berlin, 396 F.3d 895, 901 (7th Cir. 2005)).  The

1   Court concludes that is precisely the situation faced by Grace Church in this case.

2          Additionally, Grace Church raises concerns about the financial impact of the CUP

3   process to date and the resulting uncertainty regarding the church's future at the Via

4   Frontera property.  The cost of making the improvements to the Via Frontera property

5   necessary for Grace Church to use the parcel as a church, is calculated at $637,238.40 plus

6   approximately 3500 hours of donated labor.  (See Turbedsky Decl. ¶ 15.)  If required to

7   amortize that amount over only five years, the annual cost of the improvements would be

8   approximately $127,000 per year, compared with approximately $63,000 per year if

9   amortized over the full period of the church's lease.  (Id.)  The difference between those

10  two amounts represents a significant portion of Grace Church's 2005 annual expenses.

11  (See Todd Decl., Ex. X at 01816.)  Defendants knew that limiting Grace Church to a CUP

12  of significantly shorter duration than the church sought might significantly impact the

13  church's financial situation.  For example, at the December 7, 2006, hearing before the

14  Planning Commission, one RBPB member stated, "the applicant's landlord stated that in

15  order for this to be a viable project for the church, in order to recoup their investment, the

16  Grace Church needs at least 10 years.  Anything shorter than that would not be

17  economically viable."  (Turbedsky Decl., Ex. J at 9:2-7.)

18         The Court concludes that Defendants' opposition and cross motion for summary

19  judgment fail to satisfy Defendants' burden to respond to the evidence described above by

20  coming forward with admissible evidence demonstrating the existence of a "genuine,

21  triable issue of material fact" regarding whether Defendants imposed a substantial burden

22  on Plaintiff's exercise of religion.  See Celotex Corp., 477 U.S. at 327.  Here, the parties

23  only dispute the proper application of RLUIPA to the facts.  At oral argument, Defendants

24  confirmed that they do not seek a trial on these facts.  As to the application of RLUIPA to

25  the facts, Defendants focus on (1) why Grace Church moved from its temporary facilities in

26  the Rancho Bernardo High School, (2) whether and to what extent Plaintiff searched

27  "diligently" for a new facility, (3) the legal effect of the option clause in Plaintiff's lease,

28  and (4) whether and to what extent the CUP process prevented Pastor Turbedsky from

1   doing ministry work.  Defendants' burden, however, is to demonstrate a genuine dispute as

2   to a "material" fact.  Celotex Corp., 477 U.S. at 327.  Such arguments fail to meet that

3   burden, because they demonstrate no dispute over whether Defendants implemented a land

4   use regulation in a manner that constituted a substantial burden on Plaintiff's religious

5   exercise.  42 U.S.C. § 2000cc(a)(1).

6          Additionally, Defendants merely point to disputes over factors that the Court has not

7   relied upon in concluding that Defendants substantially burdened Plaintiff's exercise of

8   religion.  It is no defense to a claim under RLUIPA's substantial burden prong to dispute

9   the adequacy of a plaintiff's prior facilities, or whether a different site might have been

10  secured.  The question is whether the CUP process imposed on Grace Church constituted a

11  substantial burden on Grace Church's religious exercise.  The Court concludes that

12  Defendants fail to do more than "show that there is some metaphysical doubt" as to that

13  question, which is insufficient to avoid summary judgment.  Matsushita Elec. Indus. Co. v.

14  Zenith Radio Corp., 475 U.S. 574, 586 (1986).  After reviewing the evidence, the Court

15  concludes that Plaintiff has satisfied its burden on these cross motions for summary

16  judgment to establish the imposition by Defendants of a substantial burden.

17              **2.      Defendants Fail to Establish a Compelling Interest**

18          Defendants now bear the burden to establish that imposition of the substantial

19  burden on Grace Church's exercise of religion "(A) is in furtherance of a compelling

20  governmental interest; and (B) is the least restrictive means of furthering that compelling

21  governmental interest."  42 U.S.C. § 2000cc(a)(1); see 42 U.S.C. § 2000cc-2(b).

22  Defendants contend that a local government has a compelling interest in enforcing its

23  zoning and planning regulations, particularly when it is enforcing those regulations with the

24  purpose of protecting industrial lands for industrial use, the reason stated by Defendants for

25  the denial of Grace Church's request for a ten year CUP.  (See Todd Decl., Ex. I (City's

26  interrogatory response) at 11:15-23.)

27          The Court concludes that Defendants "fail[] to make a showing sufficient to

28  establish the existence of an element essential to [Defendants'] case, and on which

1  [Defendants] will bear the burden of proof at trial." <u>Celotex Corp.</u>, 477 U.S. at 322.  First,

2  the Court concludes that preservation of industrial lands for industrial uses does not

3  constitute a "compelling interest" for purposes of RLUIPA.  42 U.S.C. § 2000cc(a)(1).

4  Compelling state interests are "interests of the highest order." <u>Church of the Lukumi</u>

5  <u>Babalu Aye, Inc. v. City of Hialeah</u>, 508 U.S. 520, 546 (1993).  Even if, generally

6  speaking, preservation of industrial lands constituted an important interest,[2] the government

7  bears the burden to show "a compelling interest in imposing the burden on religious

8  exercise in the particular case at hand, not a compelling interest in general." <u>Westchester</u>

9  <u>Day School v. Village of Mamoroneck</u>, 504 F.3d 338, 353 (2d Cir. 2007).

10      The facts of this case belie Defendants' claim that they have a "compelling interest"

11  in preserving industrial lands in the industrial park where Grace Church has secured its

12  property.  The zoning provisions applicable to the Rancho Bernardo Industrial Park

13  expressly permit specific non-industrial uses, including church use.  The City received a

14  proposal from its Economic Development Department to eliminate all non-industrial office

15  uses from areas zoned as the RBIP is, but that proposal was never adopted.  (<u>See</u> Todd

16  Decl., Ex. K at 68:3-9, 87:15-16; Ex. O; Ex. P.)  These facts reflect a conscious decision to

17  permit non-industrial uses within this industrial park, which lessens the force of

18  Defendants' claim that preserving industrial lands is a "compelling interest."

19      Additionally, consistent with zoning that expressly permits specified non-industrial

20  uses, several parcels within the industrial park have been occupied by non-industrial uses.

21  Of the approximately 600 acres in the Rancho Bernardo Industrial Park, roughly 100 are

22  slated for office (i.e., non-industrial) uses.  (<u>See</u> Todd Decl., Ex. K at 56:24-57:10.)  The

23  parcel that Grace Church seeks to use has been vacant for several years, and the adjacent

24

25      [2] The Ninth Circuit in <u>Guru Nanak</u> rejected a similar land use argument.  In that case, the only potential governmental interest supported by the record was preservation of agricultural zones for

26  agricultural uses.  The district court stated, "defendants [did] not attempt to argue that . . . concerns about consistency with agricultural use constitute a compelling interest," noting that the defendants'

27  "reluctance to raise such arguments is understandable, for the strict scrutiny standard imposed by RLUIPA is a difficult one to meet." <u>Guru Nanak Sikh Society of Yuba City v. County of Sutter</u>, 326

28  F. Supp. 2d 1140, 1154 (E.D. Cal. 2003).  When the Ninth Circuit affirmed the district court's grant of summary judgment, the Ninth Circuit noted that "[t]he County effectively concede[d] that it has no compelling interest." <u>Guru Nanak</u>, 456 F.3d at 992.

07cv419

property is a 150,000 square foot Class A office building that replaced a 45,000 square foot industrial building.  (Todd Decl., Ex. L; see id., Ex. V at 126:17-22.)  One way to evaluate a claim of compelling interest is to consider whether in the past the governmental actor has consistently and vigorously protected that interest.  See Church of the Lukumi Babalu Aye, Inc., 508 U.S. at 547 ("A law cannot be regarded as protecting an interest of the highest order . . . when it leaves appreciable damage to that supposedly vital interest unprotected.").  In this case, the Court concludes that Defendants fail to meet their burden of demonstrating a genuine issue regarding whether denying Grace Church's request for a ten year CUP "is in furtherance of a compelling governmental interest."  42 U.S.C. § 2000cc(a)(1).

Second, even assuming Defendants imposed the burden on Grace Church in furtherance of a "compelling interest," the Court concludes that Defendants fail to come forward with evidence demonstrating that they did so using "the least restrictive means." 42 U.S.C. § 2000cc(a)(1).  Grace Church requested a ten year CUP, the report by City staff recommended a seven year CUP, but Defendants granted Plaintiff a permit for only five years.  To establish that this limited CUP was the "least restrictive means" of furthering the stated governmental interest, Defendants must prove that granting a five year CUP furthers the interest of preserving industrial lands, while a CUP of any longer duration would not.

The Court concludes that Defendants fail to come forward with any evidence supporting that conclusion.  If anything, the evidence supports the opposite conclusion.  The report by City staff to the Planning Commission stated that "a limited term of seven years . . . would be considered temporary and would therefore not adversely affect the Progress Guide and General plan and the Rancho Bernardo Community Plan."  (Turbedsky Decl., Ex. F at 3.)  The Planning Commission offered no explanation of why it disregarded that conclusion by City staff and reduced Grace Church's CUP to five years.  In addition to disregarding the staff's conclusion regarding what constituted a temporary use, two of the four members of the Planning Commission acknowledged that a synagogue's use of another building in the industrial park pursuant to a seven year CUP was a "temporary"

- 22 -

use.  (Todd Decl., Ex. J at 103:8-12; Ex. T at 54:1-3.)  A third member testified that he could see "no difference" between taking the Via Frontera property (which had sat vacant for several years prior to Grace Church leasing it) off the market for five years and taking it off the market for seven years, in terms of the impact on available industrial lands for industrial uses.  (Todd Decl., Ex. V at 126:17-22.)  Indeed, this litigation began largely as a result of Defendants' unexplained decision to further reduce Grace Church's CUP, from seven years to five years, even though the church indicated that it could accept a seven year CUP and specifically asked the RBPB not to appeal the City hearing officer's decision approving a CUP of seven years.  (See Turbedsky Decl., Ex. E at 3.)

In sum, the Court concludes that Defendants fail to come forward with admissible evidence supporting the existence of a compelling interest or the conclusion that failing to grant the recommended seven year CUP was the least restrictive means of furthering Defendants' stated interest.  42 U.S.C. § 2000cc(a)(1).  Grace Church has established that Defendants imposed a substantial burden on its religious exercise.  Summary judgment may be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial," because "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."  Celotex Corp., 477 U.S. at 322.  Accordingly, the Court concludes that Plaintiff is entitled to summary judgment in its favor on Plaintiff's claim that Defendants violated RLUIPA.[3]

**III.    Remedy**

Plaintiff requests damages, costs including attorney's fees, and injunctive relief. RLUIPA provides that "[a] person may assert a violation of this chapter as a claim or

---

[3]      Plaintiff also alleged that Defendants violated the provision of RLUIPA that prohibits a government from imposing or implementing "a land use regulation in a manner that treats a religious assembly or institution on less than equal terms with a nonreligious assembly or institution."  42 U.S.C. § 2000cc(b)(1). Having concluded that Defendants violated the "substantial burden" provision of RLUIPA, the Court need not reach Plaintiff's claim under RLUIPA's "equal terms" provision. As discussed above, however, some evidence cited by Plaintiff in support of its equal terms claim bears relevance to Plaintiff's claim of substantial burden.  (See Turbedsky Decl., Ex. F at C-BS-02013-02014 (table summarizing CUPs approved within Rancho Bernardo Industrial Park).)

- 23 -

07cv419

1    defense in a judicial proceeding and obtain appropriate relief against a government."  42

2    U.S.C. § 2000cc-2(a).  Additionally, Congress has provided that a "prevailing party, other

3    than the United States," is entitled to "a reasonable attorney's fee as part of the costs" in

4    "any action . . . to enforce . . . the Religious Land Use and Institutionalized Persons Act of

5    2000."  42 U.S.C. § 1988(b).  The Court will schedule further briefing and, if appropriate, a

6    hearing regarding Plaintiff's damages, an appropriate amount of attorney's fees, and the

7    proper scope of injunctive relief.

8    **IV.    Defendants' Cross Motion for Summary Judgment**

9         Defendants have moved for summary judgment or, in the alternative, partial

10   summary judgment on Plaintiff's RLUIPA claims as well as Plaintiff's other claims.  Since

11   the Court has granted summary judgment in Plaintiff's favor on Plaintiff's claim under

12   RLUIPA's substantial burden provision, and declined to reach Plaintiff's "equal terms"

13   claim, the Court denies Defendants' motion for summary judgment as to Plaintiff's

14   RLUIPA claims.

15        At this time, the Court denies without prejudice Defendants' motion for summary

16   judgment as to Plaintiff's other claims.  At oral argument, counsel for Plaintiff indicated

17   that to the extent Plaintiff succeeded on its claim(s) under RLUIPA, Plaintiff would no

18   longer need to proceed with Plaintiff's other claims.  Prior to the hearing regarding the

19   appropriate remedy for Defendants' violation of RLUIPA, Plaintiff should indicate whether

20   and/or to what extent it intends to pursue its remaining claims in light of the Court's ruling

21   on Plaintiff's RLUIPA claims.

22   ///

23   ///

24   ///

25   ///

26   ///

27   ///

28   ///

07cv419

**Conclusion**

For the reasons stated above, the Court grants Plaintiff's motion for summary judgment on Plaintiff's claim that Defendants violated RLUIPA.  The Court denies Defendants' cross motion for summary judgment as to Plaintiff's RLUIPA claims, and denies without prejudice the remainder of Defendants' cross motion.

IT IS SO ORDERED.

DATED:  May 9, 2008

_____
MARILYN L. HUFF, District Judge
UNITED STATES DISTRICT COURT

COPIES TO:
All parties of record.

07cv419